**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARISELA M. DELGADO,
on behalf of M.R.D., a minor,

    Plaintiff,

  vs.           No. 1:20-CV-00703-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,[1]

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand with

Supporting Memorandum (Doc. 24), dated May 18, 2021, challenging the determination of the

Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to

disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

The Commissioner responded to Plaintiff's motion on August 18, 2021 (Doc. 28). With the

consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c);

FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed

the administrative record. Having done so, the Court concludes that Plaintiff's motion is due to

be DENIED.

## I. PROCEDURAL POSTURE

    On March 21, 2013, Plaintiff filed an initial application for supplemental security income

("SSI") benefits on behalf of her minor child, M.R.D. (*See* Administrative Record ("AR") at 92).

Plaintiff alleged that M.R.D. became disabled on January 1, 2013 due to a learning delay. (*Id.* at

93-94). In a determination dated June 21, 2013, the Commissioner found that M.R.D. suffered

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

from two severe impairments—a learning disorder and a speech and language impairment—and that these impairments functionally equaled the listings of disabling impairments at Appendix 1 of the SSA's regulations, 20 C.F.R. Part 404, Subpart P. (*See, e.g.*, *id.* at 92, 95). Consequently, the Commissioner found M.R.D. to be disabled effective March 1, 2013, and awarded SSI benefits to Plaintiff on M.R.D.'s behalf. (*See id.*).

The Commissioner conducted a continuing disability review in late 2016 and early 2017. (*See, e.g.*, *id.* at 296-321). In a determination dated March 27, 2017, the Commissioner concluded that medical improvement had been established and that M.R.D. was no longer disabled effective March 1, 2017. (*See id.* at 102-03); (*see also id.* at 497-502) (childhood disability evaluation form). The Commissioner reached the same conclusion at the reconsideration level on July 27, 2017. (*See id.* at 104-05); (*see also id.* at 521-22) (medical evaluation). A hearing officer concurred with this decision following a hearing on October 5, 2017, finding that M.R.D. continued to suffer from severe impairments in the form of a learning disability and attention deficit hyperactivity disorder ("ADHD") but that her impairments did not meet, medically equal, or functionally equal a listing-level impairment due to medical improvement. (*See id.* at 106, 119-42).

Plaintiff requested a hearing before an administrative law judge (ALJ) (*see id.* at 146), which ALJ Cole Gerstner conducted on December 13, 2018 (*see id.* at 53-75). M.R.D. was represented by a non-attorney representative and testified at the hearing. (*See id.* at 53, 66-74). Plaintiff also testified at the hearing. (*See id.* at 62-65).

On April 19, 2019, the ALJ issued his decision, finding that M.R.D.'s disability ended as of March 1, 2017, and that she had not been disabled under the relevant sections of the Social Security Act since that date. (*See id.* at 27-45). Plaintiff requested that the Appeals Council

review the ALJ's decision (*see id.* at 233-34), and after setting aside an initial denial of review (*see id.* at 9-11) in order to consider more information, the Appeals Council again denied that request for review on May 18, 2020 (*see id.* at 1-3). This action resulted in the ALJ's decision becoming the final decision of the Commissioner. On July 14, 2020, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has

been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

### B.  Child Disability Framework and Continuing Disability Review

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In the context of children's disability cases, a child is disabled if she has a medically determinable impairment that results in "marked and severe functional limitations" and meets the twelve-month duration requirement of the Social Security Act. 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide for a three-step sequential process to initially determine a child's disability:

> [1] If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further.

> [2] If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further.

> [3] If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

*See* 20 C.F.R. § 416.924(a) (2011).

In conducting a continuing disability review, the Commissioner follows a separate three-step sequential process to determine whether a child's previously awarded disability benefits should be discontinued:

> [1] We will first consider whether there has been medical improvement in your impairment(s). . . .
>
> [2] If there has been medical improvement, we will consider whether the impairments(s) [*sic*] you had at the time of our most recent favorable determination or decision now meets or medically or functionally equals the severity of the listing it met or equalled at that time. . . .
>
> [3] If not, we will consider whether your current impairment(s) are disabling under the rules in § 416.924.

20 C.F.R. § 416.994a(a) (2017); *see also id.* § 416.994a(b) (outlining steps in more detail).

For an impairment to "functionally equal" a listing, the impairment "must be of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a) (2017). The relevant domains of functioning include (i) acquiring and using information; (ii) attending to and completing tasks; and (iii) interacting and relating with others. 20 C.F.R. § 416.926a(b)(1).[2] For present purposes, an "extreme" limitation in a domain of functioning interferes "very seriously" with a child's ability to "independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(3)(i), while a "marked" limitation interferes "seriously" with such abilities or is otherwise "'more than moderate' but 'less than extreme,'" 20 C.F.R. § 416.926a(e)(2)(i).

### III.  The ALJ's Determination

The ALJ reviewed M.R.D.'s claim pursuant to the three-step sequential evaluation process applicable to continuing disability reviews. (AR at 27-30). At the first step, the ALJ

---

[2] On appeal, Plaintiff does not claim that M.R.D. suffers from marked or greater limitations in the remaining domains of functioning, *i.e.*, moving about and manipulating objects, caring for one's self, and health and physical well-being. See 20 C.F.R. § 416.926a(b)(1)(iv)-(vi); (*see also* Doc. 24 at 23) (alleging error only in ALJ's findings as to the above-referenced domains). Accordingly, these domains are not addressed further.

determined that the most recent favorable medical decision finding M.R.D. to be disabled, also known as the "comparison point decision" (CPD), was the Commissioner's determination of disability dated June 21, 2013. (*See id.* at 30). He noted the CPD findings that M.R.D. suffered from the medically determinable impairments of a learning disorder and speech and language delays and that these impairments functionally equaled the listings due to marked limitations in acquiring and using information and attending and completing tasks. (*See id.* at 30-31). The ALJ then determined that the record supported a finding of medical improvement as of March 1, 2017. (*See id.* at 31). In reaching this determination, the ALJ considered medical evidence, M.R.D.'s individualized education program documents ("IEPs"), records from her school and her school system, statements from teachers, results of certain school assignments, and testimony from Plaintiff and from M.R.D. (*See id.* at 31-33).

At the second step, the ALJ concluded that the impairments documented at the time of the CPD have not functionally equaled a listing-level impairment since March 1, 2017. (*See id.* at 33). In so concluding, the ALJ found that M.R.D. had less than marked limitations in the three relevant domains of functioning addressed at 20 C.F.R. § 416.926a(b)(1)(i)-(iii) and no limitations in the remaining functional domains. (*See id.* at 33-38).

The ALJ then proceeded to the final step of the continuing disability review process, which required a new assessment of M.R.D.'s current impairments under 20 C.F.R. § 416.924(c)-(d). (*See id.* at 38). The ALJ first determined that while M.R.D.'s ADHD constituted a severe impairment, this impairment did not meet or medically equal a listing-level impairment. (*See id.* at 38-39). He then assessed the evidence of record, including documents and opinions from medical and administrative sources, teacher statements, school records, and subjective symptom evidence from M.R.D. and from Plaintiff. (*See id.* at 39-43). Having done

so, the ALJ again determined that M.R.D. possessed less-than-marked limitations in the three relevant domains of functioning. (*See id.* at 43-44). The ALJ therefore concluded that M.R.D.'s impairments did not functionally equal the listings and that she was not disabled. (*Id.* at 39, 45).

## IV. DISCUSSION

Plaintiff challenges the ALJ's findings at each of the three steps of the continuing disability review. (*See* Doc. 24 at 6-25). At step one, Plaintiff disputes the Commissioner's finding of medical improvement. (*See id.* at 6-9). At step two, Plaintiff challenges the ALJ's determination that M.R.D.'s impairments as described in the CPD no longer functionally equaled the listings. (*See id.* at 9-23). Finally, at step three, Plaintiff argues that the ALJ erred in finding less-than-marked limitations in M.R.D.'s ability to interact and relate with others as a result of her current impairments. (*See id.* at 23-25). Although the Court concludes that the ALJ erred in assessing one functional domain at step two, the Court also finds that this error was harmless and that remand is not warranted.

### A.  Medical Improvement

Plaintiff's challenge to the Commissioner's finding of medical improvement at step one has two facets. First, Plaintiff seems to contend that any evidence of improvement in M.R.D.'s communication impairment is irrelevant because "the basis for finding M.R.D. disabled was not speech-language scores." (*See* Doc. 24 at 8). Second, Plaintiff appears to argue that the Commissioner's finding of medical improvement was unsupported by substantial evidence. (*See id.* at 8-9). The Commissioner argues that the ALJ's finding of medical impairment was reasonable and supported by substantial evidence. (*See* Doc. 28 at 8-9).

The term *medical improvement* is defined in the SSA regulations as

any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued

7

to be disabled. Although the decrease in severity may be of any quantity or degree, we will disregard minor changes in your signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that your disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s).

20 C.F.R. § 416.994a(c).

At the outset, the parties disagree on the nature of the severe impairments found by the Commissioner at the time of the CPD. Although both parties acknowledge that the CPD listed a learning disorder as a severe impairment, the Commissioner takes the position that M.R.D. also suffered from a severe "speech and language impairment" (Doc. 28 at 9); (*see also* AR at 31) ("At the time of the CPD, benefits were awarded on the basis of a learning disorder and speech/language impairment."), while Plaintiff asserts that the CPD's disability determination "was not based on a speech/language disorder" (*see, e.g.*, Doc. 24 at 6-7). The Commissioner reads the record correctly—the CPD diagnoses both impairments, and it categorizes both as "severe." (*See* AR at 95-96) (listing "3152 – Learning Disorder" as a "primary" impairment and "3153 – Speech and Language Impairment" as a "secondary" impairment, with both listed as "severe").[3] Consequently, Plaintiff's argument that such an impairment was not part of "the basis for finding M.R.D. disabled" in the CPD (*see* Doc. 24 at 8) is without merit.

Plaintiff also argues that no actual medical improvement exists because M.R.D.'s speech-language testing results "were in the normal range in 2013, and [in] subsequent years." (*See id.*). Again, Plaintiff misreads the record. In the 2013 CPD, the Commissioner noted among other things that M.R.D. possessed "very low range in basic reading skills . . . , reading comprehension

---

[3] Plaintiff's counsel, who became involved in this case at later stages of the administrative proceedings, may be forgiven for missing the latter impairment—the severity level of the speech and language impairment is obscured by the exhibit label and pagination in the upper-right corner of the relevant page of the AR, and the impairment itself is obscured when PACER headers are included in the document. (*See* AR at 96).

. . . , [and] written expression," "low range in phonemic awareness," a virtual inability to correctly complete responses to a Spanish version of diagnostic testing despite being considered bilingual, and trouble with pronunciation and reading short sentences. (*See* AR at 96). Conversely, the ALJ's 2019 decision cited IEPs and other recent school records that, while still documenting deficits in reading and writing, nonetheless showed progress with reading; an ability "to write an essay with most proper structure and conventions"; passing grades in Language Arts, Spanish, and Bilingual Studies; substantially increased iReady Language test scores; testing out of both phonological awareness and high frequency word subtests; and a recent English informational comprehension test that, though exhibiting difficulties with punctuation, showed high accuracy in other areas. (*See id.* at 31-32) (citations omitted). The ALJ further highlighted evidence that M.R.D. was strong enough with her Spanish language skills to help learners who were new to the language, that she was "very bright when it comes to verbal questions," that she "enjoyed socializing with her friends and working in groups with these selected friends," and that she no longer received speech services. (*See id.* at 32). Finally, the ALJ noted medical evidence that M.R.D.'s language scores were only "just out of the average range" and that she was "clearly bilingual" in that she was "proficient in Spanish and continuing to develop the emergent language, English." (*See id.* at 32-33).

Overall, although the ALJ acknowledged that M.R.D. "underachieves in reading comprehension and written language," he found that the foregoing evidence "shows significant improvement since the prior determination." (*See id.* at 32). Having reviewed the record, including the specific evidence cited by the ALJ, the Court concludes that the ALJ's finding of medical improvement in M.R.D.'s speech and language impairment was supported by substantial

evidence. Plaintiff's argument to the contrary, which is largely premised on a misreading of the CPD, is without merit.[4] The Court therefore finds no error at step one.

## B.   Functional Equivalence at Step Two

At step two of the continuing disability review, an ALJ must consider whether the child's impairments still meet or equal the severity of the listed impairment that it previously met or equaled. 20 C.F.R. § 416.994a(b)(2). "In making this decision, [the ALJ] will consider the current severity of the impairment(s) present and documented at the time of our most recent favorable determination or decision, and the same listing section used to make that determination or decision as it was written at that time . . . ." *Id.* Here, Plaintiff argues that the ALJ erred by failing to follow proper legal standards when evaluating M.R.D.'s functional domain limitations and that his conclusions were not supported by substantial evidence.[5] (*See, e.g.*, Doc. 24 at 10-11). The Commissioner pushes back against both arguments. (*See* Doc. 28 at 10-14).

When assessing the severity of a child claimant's limitations in a functional domain, the ALJ must "consider all the relevant information in [the child's] case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the

---

[4] Plaintiff's argument is flawed for a second reason: In attacking the finding of medical improvement, she focuses not on the ALJ's decision, but on findings included in an administrative determination made prior to the ALJ's review. (*See* Doc. 24 at 8-9) (citing AR at 102-04). However, the prior administrative determination is not the "final decision" under review by this Court. *Cf.* 42 U.S.C. § 405(g) (permitting review of any "*final* decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party") (emphasis added). Because the proper focus at the judicial review stage is on the actual "final decision" at issue—that is, the ALJ's decision—Plaintiff's arguments with respect to the prior administrative determination are not well-taken.

[5] Plaintiff also argues, once again, that the ALJ's domain evaluations rely on an erroneous belief that M.R.D.'s disability determination was not in any way premised on a finding of a severe speech and language impairment. (*See* Doc. 24 at 6-7). As the Court has previously observed, this is incorrect. (*See* AR at 95-96). Moreover, the CPD makes it clear that the findings of marked limitations in acquiring and using information and in attending and completing tasks were premised at least in part on M.R.D.'s speech and language impairment. (*See id.* at 96-97) (citations omitted) (noting, *e.g.*, "low" or "very low" range of communication abilities and citing teacher questionnaires documenting obvious, serious, and/or very serious problems in multiple activities with a nexus to communication abilities). On this record, the Court finds that substantial evidence supports the ALJ's conclusion that any improvements in M.R.D.'s speech and language impairment were relevant to her limitations in these functional domains.

descriptions we have about your functioning from your parents, teachers, and other people who know you, and [other] relevant factors." *See* 20 C.F.R. § 416.926a(e)(1)(i). Using this information, the ALJ must engage in a "whole child" analysis "account[ing] for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments." Social Security Ruling (SSR) 09-1P, 2009 WL 396031, at *2 (Feb. 17, 2009); *see also id.* (stating that Commissioner will "always evaluate the 'whole child' when [it] make[s] a finding regarding functional equivalence").[6] The "critical element" of the whole-child evaluation is a determination of "how appropriately, effectively, and independently the child performs age-appropriate activities." *See Panas ex rel. M.E.M. v. Comm'r, SSA*, 775 F. App'x 430, 435 (10th Cir. 2019) (unpublished) (quoting SSR 09-2P, 2009 WL 396032, at *3 (Feb. 18, 2009)).[7]

In analyzing these issues, the ALJ must discuss not only the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Moreover, the ALJ may not "pick and choose" from the record, "using portions of evidence favorable to his position while ignoring other evidence." *See Panas*, 775 F. App'x at 436-37 (quoting *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008)).

Plaintiff argues that the ALJ erred in applying the whole-child standard by failing to "asses[s] M.R.D.'s abilities compared to other children her age without impairments." (*See, e.g.*, Doc. 24 at 12). In *Panas*, the Tenth Circuit held that remand was appropriate where the ALJ "did not adequately assess the relevant evidence and explain his determination that her limitations in

---

[6] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; see also *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[7] The Court cites *Panas*, as well as the district court decisions referenced in this opinion, for their persuasive value unless otherwise stated.

each domain as compared to her peers were less than 'marked.'" *See Panas*, 775 F.3d at 435. However, this holding arose from an ALJ decision that provided only "boilerplate language" and single-sentence findings that the claimant faced less-than-marked limitations in multiple functional domains, without properly weighting certain medical opinions or addressing other probative pieces of evidence to the contrary. *See id.* at 435-39. By contrast, the ALJ's decision in this case devotes a paragraph of non-boilerplate language to the discussion of each relevant functional domain, with findings purporting to address the question of how appropriately, effectively, and independently M.R.D. performs age-appropriate activities. (*See* AR at 33-36). The questions, then, are whether these findings suffice as substantial evidence for the determinations of less-than-marked limitations in those domains and whether the ALJ followed controlling legal standards in making those determinations.

### i.   *Acquiring and Using Information*

Plaintiff contends that M.R.D.'s December 2018 IEP provides evidence of a marked limitation in acquiring and using information that required more discussion (*see* Doc. 24 at 12-13), while the Commissioner argues that the ALJ adequately addressed that IEP (*see* Doc. 28 at 11, 12). In according great weight to all IEPs in the record, the ALJ described them as incorporating both teacher observations and "objective evidence," noting "both good and poor grades in school," showing "some behavioral issues," and demonstrating that M.R.D. had "partially met goals with regard to decoding words using phonic and syllabication strategies." (AR at 34, 42); (*see also id.* at 43) (recording, *e.g.*, easy distraction); (*id.* at 402) (describing partial progress on phonics and syllabication). While these findings were supported by the record, they do not tell the whole story. As Plaintiff contends, recent standardized testing results recorded in the December 2018 IEP show that M.R.D., while in the eighth grade, was performing

most individual English language tasks at a kindergarten or first-grade level and was performing

such tasks at a first-grade level overall. (*See id.* at 401) (listing iReady scores). The same testing

showed overall math performance at a third-grade level, with sixth-grade performance in one

skill but substantially lower performance in all others. (*See id.* at 402). A different round of tests

from the previous academic year also showed that M.R.D. was failing to meet grade-level

expectations in either English language or mathematics. (*See id.* at 401) (listing PARCC scores).

The aforementioned scores are recent and significant evidence that M.R.D. is "reading,

writing, [and] doing arithmetic" substantially below her grade level, which in turn is probative to

the question of whether M.R.D. is functioning appropriately when compared to her peers. SSR

09-3P, 2009 WL 396025, at *6 (Feb. 17, 2009) (describing standards relevant to the "acquiring

and using information" functional domain); *cf.* 20 C.F.R. § 416.926a(e)(2)(iii), (3)(i) (stating that

a marked or greater limitation is equivalent to comprehensive standardized testing results at least

two standard deviations below the mean).[8] The ALJ's failure to address these results and to

explain why they did not warrant a finding of marked limitation in M.R.D.'s ability to acquire

and use information, and to instead discuss only those aspects of the record which supported a

contrary conclusion, was error. *See Clifton*, 79 F.3d at 1010; *Carpenter*, 537 F.3d at 1265; *see

also Panas*, 775 F. App'x at 437 (finding fault in ALJ's failure to address standardized test

scores showing child's "academic skills [were] still about two or three years below grade level in

most areas").

---

[8] Plaintiff asserts that M.R.D.'s English language scores in a previous year were "two standard deviations from Level 4 and Level 5." (Doc. 24 at 13). Plaintiff does not cite to the record in making this assertion, and none of the standardized tests cited by Plaintiff are explicitly scored in terms of standard deviations (*see* AR at 401-02), so the Court makes no findings on this point. However, "[M.R.D.'s] scores still must be considered along with other evidence," even if those scores do not fall below two standard deviations as contemplated in § 416.926a(e)(2). *See Panas*, 775 F. App'x at 437 (citing 20 C.F.R. § 416.926a(e)(4)(ii)) (noting that SSA "will consider [the child's] test scores together with other information we have about [her] functioning, including reports of classroom performance and the observations of school personnel and others").

Although the Commissioner does not deny that the ALJ failed to address M.R.D.'s standardized test scores, she dismisses the import of this omission by citing the ALJ's discussion of "similar evidence of M.R.D.'s low grades" in the context of her IEP. (*See* Doc. 28 at 12). The Court is not persuaded. Though it was appropriate for the ALJ to discuss M.R.D.'s grades in assessing her functional abilities, *see* SSR 09-3P, 2009 WL 396025, at *3, her iReady and PARCC test scores are independently probative as to that evaluation because the scoring of those results is directly framed in terms of grade-level functioning and expectations. (*See, e.g.*, AR at 401-02) (describing M.R.D.'s overall eighth-grade iReady scores as demonstrating first-grade proficiency in English language and third-grade proficiency in mathematics, and noting PARCC scores in both subjects from previous year showing M.R.D. "did not yet meet expectations"); *see also* SSR 09-3P, 2009 WL 396025, at *3 (stating SSA will consider "grade and aptitude and achievement test scores" in evaluating functional domain); SSR 09-2P, 2009 WL 396032, at *5 (stating that whole-child evaluation generally includes consideration of "[s]tandardized tests"). Further, discussion of M.R.D.'s largely passing grades was not an adequate substitution for discussion of her low standardized test scores because, on their face, the two metrics would seem to support opposite conclusions regarding her ability to acquire and use information in light of her learning disability and communication impairments. If anything, the ALJ's decision to only address M.R.D.'s mostly adequate grades in support of a finding of nondisability, while failing to address her substandard test results that suggested a different conclusion, demonstrates improper "pick[ing] and choos[ing]" from the academic evidence, not a sufficient discussion of that evidence. *See, e.g.*, *Carpenter*, 537 F.3d at 1265; *see also Clifton*, 79 F.3d at 1010 (ALJ may not limit discussion of evidence to records supporting his conclusions).

Plaintiff further argues that the ALJ should have discussed evidence of M.R.D.'s behavioral problems and that the evidentiary record otherwise overwhelms the ALJ's conclusion that M.R.D. was less than markedly impaired in acquiring and using information. (*See, e.g.*, Doc. 24 at 16-19). The Court rejects Plaintiff's argument concerning behavior because she does not explain why that issue, which on its face appears more relevant to other functional domains, is indicative of limitations in M.R.D.'s ability to acquire and use information. *Cf., e.g.*, SSR 09-5P, 2009 WL 396026, at *4 (Feb. 17, 2009) (discussing relevance of behavior to limitations in interacting and relating with others). Nevertheless, the Court assumes for present purposes that that the ALJ's conclusions as to M.R.D.'s limitations in this domain were not properly supported by substantial evidence due to his failure to properly address M.R.D.'s standardized testing scores. Because Plaintiff does not argue that a finding of "extreme" limitations in this domain is warranted (*see, e.g.* Doc. 24 at 8-9), and because a finding of "marked" limitations in one domain alone would not suffice to find that M.R.D.'s impairments are functionally equivalent to a listing, *see, e.g.*, 20 C.F.R. § 416.926a(a), the Court proceeds to consider Plaintiff's arguments as to M.R.D.'s limitations in two other functional domains.

### ii.   *Attending and Completing Tasks*

Plaintiff raises several alleged errors with respect to the ALJ's treatment of the second functional domain, M.R.D.'s ability to attend and complete tasks. She first contends that the ALJ's reliance on certain objective measures from a mini-mental status exam are irrelevant to this domain because such tests are intended "to measure cognition" rather than task completion. (*See* Doc. 24 at 20-21). In discussing that exam, the ALJ noted that M.R.D.

> completed three of five subtractions, which indicated fairly good responsiveness.
> She was able to identify common objects, repeat a phrase, and follow a three-step
> oral instruction and a one-step written instruction in English. In addition, she was

> able to write a coherent sentence, but she could not correctly copy two intersecting
> pentagons.

(AR at 34-35) (citing *id.* at 525). Although the ALJ could have been clearer when discussing the

relevance of these findings, the Court reads his analysis as addressing M.R.D.'s "ability to focus

and maintain attention" in order to "begin, carry through, and finish activities or tasks," which

are proper considerations when assessing limitations in attending and completing tasks. SSR 09-

4P, 2009 WL 396033, at *2 (Feb. 18, 2009) (discussing standards applicable to this functional

domain). The ALJ did not err in considering these findings.

Plaintiff next suggests that the ALJ failed to properly consider two teacher questionnaires

submitted by M.R.D.'s sixth-grade English teacher, Ronnie Maestas. (*See* Doc. 24 at 21).

However, the ALJ explicitly discussed each of the relevant findings relayed by Mr. Maestas and

cited by Plaintiff, including his opinion that M.R.D. had a "serious" problem with refocusing on

tasks when necessary and "obvious" problems with completing work accurately, when

addressing M.R.D.'s limitations in this domain. (*See* AR at 350) (April 2017 questionnaire); (*id.*

at 35) (ALJ discussion). The Court discerns no error here.

More broadly, Plaintiff argues that the ALJ "provide[d] no analysis for how [the cited

evidence] supports a less than marked limitation." (Doc. 24 at 20). Again, though, the Court can

follow the ALJ's reasoning. In determining that M.R.D. did not possess a marked or greater

limitation in attending and completing tasks as a result of her severe learning disability and

communication impairments, the ALJ cited: (1) objective results from a mini-mental status

exam, which supported a conclusion that M.R.D. could generally succeed in performing certain

tasks requiring her to focus and/or follow directions, *see* SSR 09-4P, 2009 WL 396033, at *2; (2)

largely passing grades, which suggests an ability to adequately complete school assignments, *see*

*id.* at *5 (stating that children in M.R.D.'s age range with typical functioning in this domain can

focus sufficiently to complete assignments); and (3) statements from Mr. Maestas generally showing "only slight problems" with focusing on tasks, despite some more serious problems in particular abilities. (*See* AR at 35). This is more than "a mere scintilla" of evidence establishing less-than-marked limitations, which is adequate to show that the ALJ supported his findings with substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).

At the end of her argument, Plaintiff includes a chart depicting evidence in the record that she says supported a finding of marked limitations in M.R.D.'s ability to attend and complete tasks. (*See* Doc. 24 at 22-23). To the extent that Plaintiff contends that the ALJ failed to properly address these aspects of the record, she has not adequately developed that argument by showing, for example, that the ALJ actually failed to discuss the relevant evidence[9] or that the evidence demonstrates limitations that are marked or greater in severity. Further, where (as here) the ALJ has pointed to substantial evidence in support of his findings and the claimant has not shown he failed to follow governing legal standards, the Court may not disturb those findings simply because there may be other evidence in the record supporting a contrary conclusion. *See, e.g.*, *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (citation omitted) ("In determining whether substantial evidence exists to support the ALJ's decision, we will not reweigh the evidence.").

Finally, Plaintiff argues that the evidence purportedly supporting a finding of a marked limitation in this domain "overwhelm[s] the evidence he used to support" a contrary

---

[9] For example, many of the matters addressed in Plaintiff's list of opinions or findings are expressly discussed in the ALJ's decision. *Compare* (Doc. 24 at 22) (citations omitted) (noting, *e.g.*, problems refocusing and need for redirection), *with* (AR at 43) (discussing these findings in the context of the first functional domain).

determination. (*See* Doc. 24 at 21). As noted, assuming the evidence Plaintiff cites may be construed as evidence that M.R.D. has *some* degree of limitations in attending and completing tasks, Plaintiff still has not developed the argument that this evidence shows that such limitations were *marked*. But even if she had shown as much, Plaintiff fails to establish that the quality and quantum of evidence that she cites is sufficient to "overwhelm" the quality and quantum of evidence that the ALJ relied upon in finding a less-than-marked limitation in this domain. *Cf., e.g.*, *Sherman v. Berryhill*, No. 18-cv-00439 KK, 2019 WL 2450919, at *14 n.40 (D.N.M. June 12, 2019) (concluding ALJ's determination of "mild" limitation, supported solely by findings in a rejected medical opinion, was overwhelmed by evidence of "moderate" limitation in medical opinions that were afforded greater weight). Without more, the mere existence of evidence purportedly supporting a finding of disability, and a claimant's unsupported characterization of this evidence as "overwhelming," will not suffice to overcome an ALJ's determination of nondisability.

In short, Plaintiff has not shown that the ALJ failed to apply controlling legal standards in assessing M.R.D.'s limitations in attending and completing tasks, that the ALJ's findings are "overwhelmed" by evidence of a marked limitation, or that his findings are otherwise unsupported by substantial evidence. The Court finds no error in the ALJ's disposition of this issue.

### C.  Functional Equivalence at Step Three

At step three of the continuing disability review, the ALJ must determine whether the child's current impairments now meet, medically equal, or are functionally equivalent to a listed impairment. *See* 20 C.F.R. § 416.994a(b)(3). In making this determination, the ALJ must "consider all impairments you now have, including any you did not have at the time of our most

recent favorable determination or decision, or that we did not consider at that time." *See id.* This process essentially mirrors the steps set forth in § 416.924(c)-(d), requiring the ALJ to determine (i) if the child has a severe impairment or combination of impairments; (ii) if so, whether the impairment(s) meet or medically equal the listings; and (iii) if not, whether the impairment(s) are functionally equal to the listings. *See id.* (citing, *e.g.*, 20 C.F.R. § 416.924(c)-(d), .926a). Here, the parties do not dispute the ALJ's conclusion that M.R.D. has a severe ADHD impairment and that her impairments do not meet or medically equal the listings. However, Plaintiff does challenge the ALJ's determination that M.R.D.'s impairments do not functionally equal the listings. (*See* Doc. 24 at 23).

Plaintiff's position at this stage relies entirely on the ALJ's alleged error in "failing to find a marked limitation in th[e] domain" of interacting and relating with others, ostensibly in combination with a finding of marked limitations in a functional domain at step two. (*See id.*). However, to the extent that Plaintiff has adequately developed her arguments on this point, they are without merit. For example, although Plaintiff asserts that the ALJ did not "appl[y] the correct legal standards," she provides detailed argumentation as to only one legal error allegedly committed in the evaluation of this functional domain—a purported failure to discuss certain evidence of M.R.D.'s poor behavior included in an "accountability card." (*See* Doc. 24 at 25) (citing *id.* at 17-18) (pointing to earlier arguments concerning accountability card). Yet Plaintiff's argument is mistaken: the ALJ's decision reflects that he expressly discussed the behavior recorded in M.R.D.'s accountability card (*see* AR at 40-41) (citing to Exhibit "13F/16") before citing M.R.D.'s "conflicts with others" and additional behavioral challenges when addressing this functional domain (*see id.* at 44). This is enough to demonstrate to the Court that the ALJ properly discussed and considered the evidence in question when evaluating M.R.D.'s

ability to interact and relate with others. *Cf., e.g.*, *Clifton*, 79 F.3d at 1010. And beyond this specific issue, Plaintiff's cursory assertion that the ALJ failed to follow legal standards (*see* Doc. 24 at 23-24) is undeveloped and, therefore, waived. *See, e.g.*, *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (citation omitted) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

Plaintiff also points to certain aspects of the record that she believes support a finding of marked limitations in this functional domain. (*See* Doc. 24 at 24-25). However, Plaintiff does not appear to assert that the ALJ failed to adequately discuss those specific issues,[10] and she has not developed any argument that those matters establish limitations of marked (as opposed to lesser) severity. In any event, such evidence will not suffice to overcome the ALJ's decision if he relied on substantial evidence to reach a contrary conclusion. *See, e.g.*, *Howard*, 379 F.3d at 947; *see also Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (citation omitted) ("The ALJ [is] entitled to resolve such evidentiary conflicts . . . ."). Here, the ALJ noted that M.R.D. was "talkative and social," that her teachers found her to be "helpful and responsible" if "mean at times," and that her IEP described her as "loquacious, friendly, and sometimes a little silly, but not disrespectfully so and not argumentative." (*See* AR at 44) (citations omitted). The ALJ also highlighted school records indicating that M.R.D. was considered "a good friend and had exhibited leadership abilities." (*See id.*) (citations omitted). These are factors that are directly relevant to the question of how limited M.R.D. is in interacting and relating with others. *See, e.g.*, SSR 09-5P, 2009 WL 396026, at *3 (describing abilities for ALJ to consider when evaluating this domain). On this record, the Court finds that the ALJ relied upon more than "a

---

[10] As before, the Court notes that any argument to that effect appears to be undermined by the ALJ's decision itself. *Compare, e.g.*, (Doc. 24 at 24) (citing evidence of M.R.D.'s hyperactivity at home), *with* (AR at 40) (describing Plaintiff's testimony that M.R.D. is "hyperactive at home").

mere scintilla" of evidence to support his determinations and that Plaintiff has not shown that contrary evidence "overwhelms" those determinations. *See, e.g.*, *Biestek*, 139 S. Ct. at 1154; *cf., e.g.*, *Sherman*, 2019 WL 2450919, at *14 n.40.

The ALJ concluded that M.R.D. possessed a less-than-marked limitation in interacting and relating with others, and Plaintiff has not shown that the ALJ failed to follow controlling legal standards or relied on less than substantial evidence in reaching this conclusion. The Court finds no error in the ALJ's disposition of this issue.

### D. Harmless Error

In summary, the Court concludes that the ALJ did not err in finding medical improvement at step one of the continuing disability review and that he did not err in finding a less-than-marked limitation in M.R.D.'s ability to interact and relate with others at step three of that review. The Court also concludes that the ALJ did not err in finding at step two that M.R.D.'s CPD impairments do not markedly limit her ability to attend and complete tasks. Conversely, the Court concludes that the ALJ did fail to follow controlling legal standards in evaluating M.R.D.'s limitations in acquiring and using information at step two.

The Court finds, however, that the ALJ's error at step two was harmless. For M.R.D.'s impairments to functionally equal a listing, it must be shown that her impairments "result in 'marked' limitations in **two** domains of functioning or an 'extreme' limitation in one domain." *See* 20 C.F.R. § 416.926a(a) (emphasis added). Plaintiff contends that if the ALJ had followed controlling legal standards and properly supported his findings, he would have found that M.R.D. was markedly limited—*not* extremely limited—in acquiring and using information. (*See, e.g.*, Doc. 24 at 8-9) (arguing that M.R.D.'s impairments "continue[] to result in *marked* limitations in . . . acquiring and using information") (emphasis added). Assuming that Plaintiff is

correct, the ALJ would nonetheless have been required to find that M.R.D. was no longer

disabled because Plaintiff has not shown that she remains markedly limited in a second

functional domain. *See* 20 C.F.R. § 416.926a(a). In other words, despite the ALJ's legal error,

"no reasonable factfinder, following the correct analysis," could find on this record that M.R.D.

remains disabled. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (quoting

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)) (discussing harmless-error standard);

*see also, e.g.*, *Griego on Behalf of Griego v. Barnhart*, No. 06-cv-00336 LCS, 2006 WL

8443214, at *8 (D.N.M. Dec. 18, 2006) (finding remand unwarranted where plaintiff did not

argue child had extreme limitations in a domain and could show, at most, a marked limitation in

only that one domain). Accordingly, the ALJ's error in evaluating M.R.D.'s limitations in

acquiring and using information was harmless, and the Court will not order remand.

## V. CONCLUSION

Having conducted a thorough review of the entire administrative record, the Court

concludes that the ALJ did not err in finding medical improvement, that the ALJ failed to follow

the correct legal standards in assessing M.R.D.'s limitations in acquiring and using information,

and that the ALJ otherwise did not err in finding less-than-marked limitations in M.R.D.'s

remaining functional domains. Because the ALJ could not find on this record that M.R.D.'s

impairments are functionally equal to a listing-level impairment, his error in evaluating her

limitations as to a single functional domain was harmless. Accordingly, Plaintiff's motion to

remand (Doc. 24) is **DENIED**.


_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**